## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

THANG LAI                                               CIVIL ACTION

VERSUS                                                  NO.  08-3984

N. BURL CAIN, WARDEN,                                   SECTION "R"(2)
LOUISIANA STATE PENITENTIARY


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Thang Lai, is incarcerated in the Louisiana State Penitentiary in

Angola, Louisiana.[2]   On January 25, 2002, he was charged by Bill of Information in

Jefferson Parish with attempted second degree murder, armed robbery and two counts

of cruelty to a juvenile.[3]   The Louisiana Fifth Circuit Court of Appeal summarized the

facts of the case as follows:

> In March of 2001, Muoi Ghi Le, her husband, and their four children
> lived in an apartment in Gretna.  Mrs. Le, who spoke only Vietnamese,
> testified at trial through an interpreter.  The children, three girls and one
> boy, were all under the age of ten.[FN1]  T.L. was the eldest child, and
> based on her birth date, she was nine years old at the time of the incident.
> On March 22, 2001, Mrs. Le was at home with her children.  The door to
> the apartment was partially opened, locked only with the security chain.
> Mrs. Le heard the chain being removed and turned to see the defendant, a
> man whom Mrs. Le knew as "Long" enter the apartment.  Mrs. Le
> recognized the defendant right away, smiled at him, and was about to greet
> him. Mrs. Le became afraid, however, when a second man entered the
> apartment.  Mrs. Le testified that the men were wearing hooded jackets and
> were attempting to cover their faces by holding the collars of the jackets
> with their teeth.

>> [FN1]  In accordance with LSA-R.S. 46:1844(W)(1)(a), the
>> initials of the minor children are used to protect their
>> identities since they were minors under the age of eighteen.

> Each man was armed with a knife, and they placed the knives at her
> throat.  They ordered Mrs. Le to kneel on the floor and demanded money.
> Mrs. Le gave the defendant her necklace.  Defendant then bound her hands

---

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 1 of 7, Bill of Information, 1/25/02.

behind her back.  He then bound the hands of all three of Mrs. Le's daughters and ordered them to their knees.  The accomplice was in Mrs. Le's room, while defendant demanded money.  Defendant told her to get him the money, or else he would choke or stab her to death.  T.L., who testified at trial without the need for the interpreter, explained that the accomplice had already found money in Mrs. Le's purse.  Mrs. Le told him that she had no money, and defendant choked her around her neck. Defendant cut a piece of cloth from her shirt and put it in her mouth, as well as the mouths of the children.  All of the children were crying.  Mrs. Le testified that when her eleven-month-old son attempted to remove the cloth from his mouth, the defendant grabbed her son by his hand and slammed him into the door.  Mrs. Le testified that the child was crying and his face was scratched.

Defendant turned to the children and told them that he would kill them if they did not tell him where the money was located.  Mrs. Le testified that T.L. gave her piggy bank to defendant.  T.L. testified that she also found an additional few dollars in Mrs. Le's purse.  Mrs. Le testified that her second child, W.L. begged defendant not to kill them, and told defendant that Mrs. Le often kept money in a pillow.  Defendant tried to open the pillow, but when he saw that there was no money, he punched the child, and then punched Mrs. Le.

Mrs. Le testified that the defendant then rolled a shirt up and wrapped it around her neck.  Holding the shirt, defendant drug Mrs. Le into the bathroom.  Defendant pulled on the shirt with both hands until she lost consciousness.  After she came to, the accomplice entered the room and spoke to defendant in English.  Defendant then cursed her and told her that he knew she had more money, and that she was going to tell him where it was located.  Mrs. Le testified that defendant told her that she was going to watch him because he was going to put hot water on her children.  Mrs. Le testified that defendant brought all of the children into the room.  Mrs. Le begged him not to kill the children and told him that she would give him the money if she had anymore.  Defendant put T.L. into the bathtub and placed her face up under the faucet.  Then, defendant turned on the hot water.  Mrs. Le saw the steam coming from the water as T.L. cried.  Mrs. Le pleaded with defendant to leave her children alone and to kill her. Instead, defendant struck Mrs. Le and placed her into the tub of hot water. T.L. was standing on Mrs. Le's foot and crying.  Defendant went out of the room, but returned.  He cursed Mrs. Le again, and threatened to kill her if

3

she did not give him the money. The accomplice entered and said he would kill them all if they did not have any money. Mrs. Le said that defendant choked her so hard that she could not breathe, and then she lost consciousness.

T.L. testified that she and her siblings thought their mother was dead. After a while, Mrs. Le awoke. When she came to, the children were surrounding her crying, begging her not to die. The family was eventually able to untie each other and escape from the bathroom. The robbers had barricaded the outside of the door with a playpen and/or a coffee table.

The police were called, and Detective Wayne Williams of the Gretna Police Department responded. He said that Mrs. Le was crying and was very upset. She still had duct tape wrapped around her wrist. Both Mrs. Le and T.L. were drenched, and the eleven-month-old had redness and swelling around his face. Mrs. Le gave a statement a few days later with the assistance of a Vietnamese interpreter who was a police officer. Detective Eric Stahl testified that the police investigation led to Duyen Nguyen's trailer on Peters Road. Ms. Nguyen testified through an interpreter at trial that defendant, whom she also knew as "Long," lived with her and rented a room from her in the trailer. Mrs. Nguyen said that defendant's brother, whom she knew as "Tony," also stayed there. After Ms. Nguyen consented to a search of the trailer, the police seized a pair of slippers from the room where Ms. Nguyen allowed the pair to sleep. Mrs. Le identified the shoes as the ones worn by the defendant. The police also seized an identification card in the name of "Dihn Lai," whom Ms. Nguyen identified as "Tony" and a tax form bearing the name of "Long Nguyen."

Detective Stahl prepared a photographic lineup containing Dihn Lai's photograph was prepared (sic) and shown to Mrs. Le. She identified Dihn Lai as the person who had knocked on her door at some point in time before March 22, 2001. Detective testified that he prepared a second line-up of "Long Nguyen," with an alias of "Duc Le" using the information from the tax form. Detective Stahl testified that Mrs. Le said she knew this person but it was not the person who committed the crime. Detective Stahl discovered through further investigation that an individual by the name of Thang Lai had been in the company of Dihn Lai when he (Dihn) was stopped in the past. Thinking that the two might be brothers, Detective Stahl prepared a photographic lineup of the defendant, Thang Lai, and Mrs. Le immediately identified Lai as the person known to her as "Long." Mrs.

4

Le also identified defendant in court as the person whom she knew as Long.

     Mrs. Le testified that she had $1900.00 in her purse and that her necklace was a jade pendant.  She testified that her neck still hurts, she has headaches and nightmares.

State v. Lai, 902 So.2d 550, 553-55 (La. App. 5th Cir. 2003); State Record Volume 7 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 04-KA-1053, pp. 2-5, April 26, 2005.

Petitioner was tried before a jury on April 28-30, 2003, and he was found guilty as charged of all four counts.[4]  After denying petitioner's motion for new trial, the state trial court sentenced him to 50 years imprisonment on the attempted second degree murder conviction, 99 years imprisonment on the armed robbery conviction, and ten years imprisonment on each of the convictions for cruelty to a juvenile.  It was ordered that the sentences be served concurrently.[5]  Petitioner appealed.[6]

On direct appeal, petitioner's counsel raised three grounds for relief:  (1) The trial court failed to provide petitioner with a neutral and impartial translator.  (2) The trial court erred in denying petitioner's new trial motion premised upon the state's improper

---

[4]St. Rec. Vol. 1 of 7, Trial Minutes (2 pages), 4/28/03; Trial Minutes (2 pages), 4/29/03; Trial Minutes, 4/30/03; Jury Verdict Form, 4/30/03; St. Rec. Vols. 4 and 5 of 7, Trial Transcript, 4/29/03; Trial Transcript, 4/30/03; St. Rec. Vol. 6 of 7, Trial Transcript (Supplemental), 4/30/03.

[5]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/28/03; St. Rec. Vol. 5 of 7, Sentencing Transcript, 5/28/03.

[6]St. Rec. Vol. 1 of 7, Motion for Appeal.

5

rebuttal argument.  (3) The trial court imposed an excessive sentence.[7]  Petitioner also filed a pro se brief in which he raised four grounds for relief:  (1) The trial court erred in not ruling on an objection to the suggestive in-court identification of petitioner.  (2)  The trial court imposed excessive sentences.  (3) The evidence was insufficient to support the verdict.  (4) The Clerk of Court erroneously identified petitioner in the record.[8]

On April 26, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed the convictions, finding no merit in the asserted grounds for relief.[9]  However, the appellate court found that petitioner's sentences were indeterminate and that there were discrepancies in the record as to the sentences.  Therefore, the appellate court remanded the matter in part for resentencing.

Petitioner filed a writ application with the Louisiana Supreme Court on May 23, 2005, asserting five grounds for relief:  (1) The trial court failed to provide petitioner with a neutral and impartial translator.  (2) The trial court erred in denying petitioner's new trial motion premised upon the state's improper rebuttal argument.  (3) The trial court erred in not ruling on an objection to the suggestive in-court identification of petitioner.  (4)  The trial court imposed excessive sentences. (5) The evidence was

---

[7]St. Rec. Vol. 5 of 7, Brief on Appeal.

[8]St. Rec. Vol. 5 of 7, Pro Se Supplemental Brief on Appeal.

[9]State v. Lai, 902 So.2d 550 (La. App. 5th Cir. 2005); St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 04-KA-1053, 4/26/05.

insufficient to support the verdict.[10]  The court denied the application without reasons on February 3, 2006.[11]

On April 18, 2006, the trial court sentenced petitioner to 50 years imprisonment on the attempted second degree murder conviction, 99 years imprisonment on the armed robbery conviction, and ten years imprisonment on each of the convictions for cruelty to a juvenile.  It was ordered that the sentences be served concurrently.[12]

Petitioner's conviction became final on May 4, 2006, 90 days after the Louisiana Supreme Court's denial, when he failed to file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On January 31, 2007, petitioner filed a pro se application for post-conviction relief in the state trial court raising the following ground for relief:  Petitioner's counsel was ineffective in failing to (a) move for a mistrial based on a suggestive in-court

---

[10]St. Rec. Vol. 7 of 7, Application for Writ of Certiorari or Review.

[11]State v. Lai, 922 So.2d 1175 (La. 2006); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2005-KO-1681, 2/3/06.

[12]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/18/06.

7

identification, (b) investigate and interview witnesses, and (c) cross-examine Detective

Eric Stahl and T.L.[13]  The State responded, opposing the application.[14]

On March 27, 2007, the state trial court issued an order denying the post-

conviction application.[15]  Petitioner then filed a writ application with the Louisiana Fifth

Circuit challenging that denial.  On May 16, 2007, the Louisiana Fifth Circuit denied the

application, finding that the application disclosed no error in the trial court's ruling.[16]

Petitioner thereafter filed a writ application with the Louisiana Supreme Court reasserting

his claims.[17]  The court denied the application without reasons on April 4, 2008.[18]

## II.   FEDERAL HABEAS PETITION

On June 13, 2008, petitioner filed a pro se petition for federal habeas corpus relief

in this court raising three grounds for relief:  (1)  Petitioner's counsel was ineffective in

failing to (a) move for a mistrial based on a suggestive in-court identification,

---

[13]St. Rec. Vol. 7 of 7, Application for Post-Conviction Relief, 1/31/07.

[14]St. Rec. Vol. 3 of 7, State's Opposition to Petitioner's Application for Post-Conviction Relief.

[15]St. Rec. Vol. 7 of 7, Order, 3/27/07.

[16]St. Rec. Vol. 7 of 7, 5th Cir. Order, 07-KH-322, 5/16/07.  Although it is not reflected in the state court record submitted to this court, this Court of Appeal has since been ordered to reconsider this ruling in light of the Louisiana Supreme Court's en banc ruling in State v. Cordero, 993 So.2d 203 (La. 2008).  State ex rel. Lai v. State, No. 2008-KH-2030, 2008 WL 4862657 (La. Oct. 10, 2008).

[17]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 2007-KH-1423, 6/11/07.

[18]State ex rel. Lai v. State, 978 So.2d 322 (La. 2008); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2007-KH-1423, 4/4/08.

(b) investigate and interview witnesses, and (c) cross-examine Detective Eric Stahl and

T.L. (2)  Petitioner's right to a fair trial was violated when the trial court overruled

defense counsel's objection to the State's improper rebuttal argument and denied the

motion for new trial.  (3)  Petitioner's right to a fair trial was violated when the

interpreter made an in-court identification for the State's testifying witness.[19]  The State

filed an opposition in response to the federal petition, arguing that petitioner's claims

have no merit.[20]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and

applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[19]Rec. Doc. No. 4.

[20]Rec. Doc. No. 9.

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to the instant petition, which is deemed filed in this federal court on June 13, 2008.[22]

The State concedes that the instant petition is timely and that the claims are exhausted.  The State argues, however, that petitioner's claims are without merit.

IV.    STANDARDS OF REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

---

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The instant petition was filed by the clerk of court on August 22, 2008, when the filing fee was paid.  Petitioner dated his signature on the petition on June 13, 2008.  Rec. Doc. No. 4.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on  other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000);  Penry, 532 U.S. at 792-93;  Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

11

v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006), cert. denied, 127 S.Ct. 2996 (2007).

V.    INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. ONE)

Petitioner alleges that he received ineffective assistance from his trial counsel, who failed to (a) move for a mistrial based on a suggestive in-court identification, (b) investigate and interview witnesses, and (c) cross-examine Detective Eric Stahl and T.L. These allegations were raised in petitioner's state court post-conviction application and dismissed by the state district court.  In doing so, the court correctly summarized the law applicable to such claims:

> Petitioner has a Sixth Amendment right to effective counsel. Counsel's performance will be evaluated under the well-known test of *Strickland v. Washington*, 466 U.S. 668 (1984).  To be successful in arguing ineffective assistance of counsel, a petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment.  A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.

There is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

St. Rec. Vol. 7 of 7, Order, p. 1, 3/27/07. As noted below in detail, the Court of Appeal found that petitioner's three allegations of ineffective assistance had no merit. The court then concluded:

A review of the proceedings, both before and during trial, reveals that counsel was prepared and zealous in her representation of the petitioner. In fact, this court concludes that counsel performed with a high standard of excellence. Furthermore, the results of the proceeding cannot be considered untrustworthy.

The burden of proof in this post-conviction proceeding is on the petitioner. LSA-C.Cr.P. art. 930.2. After a review of the record and pleadings, this court concludes that the petitioner has failed to prove either prong of the *Strickland* standard. As such, he has not met his burden and is not entitled to relief.

St. Rec. Vol. 7 of 7, Order, p. 2, 3/27/07. When petitioner then sought review of that judgment by the Louisiana Fifth Circuit Court of Appeal, that court denied relief finding no error in the trial court's ruling.[23] The Louisiana Supreme Court denied petitioner's subsequent writ application without further comment.[24]

---

[23]St. Rec. Vol. 7 of 7, 5th Cir. Order, 07-KH-322, 5/16/07.

[24]State ex rel. Lai v. State, 978 So.2d 322 (La. 2008); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2007-KH-1423, 4/4/08.

13

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in Strickland, 466 U.S. at 668, which the state trial court cited and applied. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under

14

Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

For the following reasons, I have determined that petitioner is not entitled to relief based on any of his three allegations of ineffective assistance.

A.   FAILURE TO MOVE FOR A MISTRIAL BASED ON A SUGGESTIVE
     IN-COURT IDENTIFICATION

Petitioner first alleges that his counsel was ineffective in failing to move for a mistrial during the testimony of Muoi Ghi Le based on a suggestive in-court identification.  In rejecting that claim in the post-conviction proceedings, the state district court held:

> Turning to the petitioner's specific complaints against his attorney, this court will address the issue of counsel's failure to move for a mistrial after in-court identifications were made.  The petitioner asserts that the Vietnamese interpreter suggested where the witness look and that this created a suggestive identification.  Factually, the contention that the interpreter was making suggestions was disputed by the prosecutor. Furthermore, the record reflects that the defense attorney objected to the court reporter's action during testimony regarding identification.  Thus counsel, aware of the interpreter's action, made a strategic decision, based on her personal knowledge and professional judgment of the situation in the courtroom, to handle the matter by objection, rather than moving for a mistrial.
>
> Upon a review of petitioner's claim and the transcript for this exchange, the court concludes that counsel's action was a sound strategic decision.  The defendant was not prejudiced by this decision and is not entitled to have his conviction set aside.

St. Rec. Vol. 7 of 7, Order, pp. 1-2, 3/27/07.  The Louisiana Fifth Circuit Court of Appeal found no error in that ruling,[25] and the Louisiana Supreme Court denied petitioner's subsequent writ application without further comment.[26]

---

[25]St. Rec. Vol. 7 of 7, 5th Cir. Order, 07-KH-322, 5/16/07.

[26]State ex rel. Lai v. State, 978 So.2d 322 (La. 2008); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2007-KH-1423, 4/4/08.

As the state courts correctly noted, a decision not to move for a mistrial is one of trial strategy.  Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) ("It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one."); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *12 (E.D. La. Oct. 17, 2007); Brooks v. Cain, Civ. Action No. 06-1869, 2007 WL 2990935, at *17 (E.D. La. Oct. 11, 2007).  The United States Fifth Circuit Court of Appeal has noted that counsel's "conscious and informed" strategic decision not to seek a mistrial "'cannot be the basis for constitutionally ineffective assistance unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"  Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (quoting Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir. 2005)).  In making that decision, counsel is "required to balance the harm caused by the [improper conduct] against the legitimate possibility that a new trial would present less propitious prospects for his client."  Id.

As with all decisions concerning matters of strategy and defense tactics, this court must apply the "strong presumption" that such decisions fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999)

17

(citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d

968, 983-84 (5th Cir. 1994)).   Federal habeas courts presume that trial strategy is

objectively reasonable unless clearly proven otherwise.   <u>Strickland</u>, 466 U.S. at 689;

<u>Moore</u>, 194 F.3d at 591.   The burden is on petitioner to demonstrate that counsel's

strategy was unreasonable.   <u>Id</u>.   Petitioner has made no such showing in the instant case.

In any event, the state courts correctly noted that petitioner cannot establish the

prejudice necessary to support his claim.   The events on which the instant claim is based

occurred during the direct examination of Ms. Le in the following exchange:

> Q.     Muoi, do you see the individual in the courtroom that you know as
> Long?
>
> MS. GLORIOSO [defense counsel]:
>         Objection, Judge, the interpreter is telling her where to look.
>
> MS. HABISREITINGER [prosecutor]:
>         Judge, I'm going to ask –
>
> THE WITNESS:
>         That's him, that's Mr. Long.  (Crying)
>
> MS. HABISREITINGER:
>         I'm just state (sic) for the record, the way the witness is
> positioned, she's a short woman, she was not able to immediately see over
> the table and the individual is very small.  She had to stand up in order to
> just get a look at him.
>
> BY MS. HABISREITINGER:
>
> Q.     Is there any doubt in your mind that that's the individual that came
> in and terrorized you and your family?

A.      That's exactly him.  (Witness crying)

St. Rec. Vol. 4, Trial Transcript, 4/29/03, pp. 38-39.

There is simply no basis for finding that petitioner was prejudiced by counsel's failure to move for a mistrial.  First, there is nothing, other than counsel's bald assertion, indicating that the interpreter in fact improperly suggested the direction in which the witness should look to identify petitioner.  Second, it is evident that neither the judge, who failed to rule on the objection, nor defense counsel, who failed to press for a ruling, considered the alleged incident sufficiently prejudicial to warrant further exploration, much less the extreme remedy of mistrial.  Third, and most importantly, this is not a situation in which the testifying witness was making an in-court identification of a stranger.  Rather, the witness was already acquainted with petitioner prior to the crime and was able to identify him immediately in a pretrial photographic line-up.  Therefore, even assuming that the interpreter looked in petitioner's direction when Ms. Le was making the in-court identification, there is no reason to believe that the interpreter's action in any way influenced Ms. Le or assisted her in identifying a person clearly already known to her.  Under these facts, it is evident that a mistrial was not warranted and would not have been granted, so there is no reasonable probability that the result of the proceeding would have been different if counsel had moved for a mistrial. Strickland, 466 U.S. at 694; Geiger, 540 F.3d at 309.

19

For the foregoing reasons, the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  Petitioner is not entitled to relief on this claim.

B.      FAILURE TO INVESTIGATE AND INTERVIEW WITNESSES

Petitioner next alleges that his trial counsel was ineffective in failing to investigate and interview witnesses.  In rejecting that claim in the post-conviction proceedings, the state district court held:

> Turning to petitioner's next complaint, this court will address the issue of the alleged failure of trial counsel to investigate and interview witnesses.
> The record shows that defense counsel hired an investigator to prepare for trial.  The record also reveals that counsel attempted to speak with the prosecution victims and witnesses before trial.  The witnesses refused to speak to defense counsel.  While it is true that counsel owes a duty of preparation, witnesses have no duty to speak to counsel in their preparation.  This complaint, therefore, fails to assert a valid ground for relief.

St. Rec. Vol. 7 of 7, Order, p. 2, 3/27/07. Again, the Louisiana Fifth Circuit Court of Appeal found no error in that ruling,[27] and the Louisiana Supreme Court also denied petitioner's subsequent writ application without further comment.[28]

---

[27]St. Rec. Vol. 7 of 7, 5th Cir. Order, 07-KH-322, 5/16/07.

[28]<u>State ex rel. Lai v. State</u>, 978 So.2d 322 (La. 2008); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2007-KH-1423, 4/4/08.

The United States Fifth Circuit Court of Appeals has held: "An attorney has a duty to independently investigate the charges against his client.  Under this court's jurisprudence, there must be a 'reasonable amount' of pretrial investigation." Bower v. Quarterman, 497 F.3d 459, 467 (5th Cir. 2007) (citation omitted), cert. denied, 128 S.Ct. 2051 (2008).  Further, "this circuit has recognized that, at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation on the facts and circumstances of the case." Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985).

However, the crucial inquiry in this regard is whether "counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  As the state court noted and petitioner concedes, the circumstances of the instant case are that defense counsel in fact hired an investigator, Ronnie Montgomery, to locate and interview the witnesses.  In a memorandum dated December 4, 2002, a copy of which is attached to petitioner's federal application, Montgomery stated that defense counsel "requested that I make every effort to locate and interview all of the victims involved with this case.  I was also asked to serve subpoenas to the victims along with others witnesses and police officers."  Montgomery further stated that, despite his extensive efforts, he was unable to locate many of the individuals.  He concluded by stating that he had "exhausted every resource available to locate the witnesses with no success."

21

Unsatisfied by that explanation, petitioner argues that counsel could have done even more to locate the witnesses.  Even if Lai's speculation in this regard might be true, it is not dispositive.  "[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers."  Lovette v. Florida, 627 F.2d 706, 708 (5th Cir. 1980).  Rather, she is required only to make reasonable efforts, and that standard was clearly met in this case.  Where, as here, counsel made a concerted attempt to locate and interview witnesses, her obligation under the Sixth Amendment was satisfied even though she was ultimately unsuccessful.  Id.

Petitioner has failed to establish that he is entitled to relief on this claim under Strickland or that any denial of relief on this claim by the state courts was contrary to, or an unreasonable application of, Supreme Court law.

C.    FAILURE TO CROSS-EXAMINE DETECTIVE ERIC STAHL AND T.L.

Lastly, petitioner alleges that his counsel provided ineffective assistance in failing to cross-examine Detective Eric Stahl and T.L.  In rejecting that claim in the state post-conviction proceedings, the state district court held:

> Turning to the petitioner's third complaint, this court will address the issue of counsel's decision not to cross-examine certain witnesses.
> The petitioner complains first that his attorney chose not to question a police officer at the motion to suppress hearing.  It is well-settled that a defense lawyer's strategy in cross-examination of witnesses will not be second-guessed by a court on review.
> The petitioner also complains that his attorney failed to cross-examine the victim, T.L., a nine-year old child.  On direct, the witness

22

> testified that she would not be able to identify the perpetrator that day.  In
> closing argument, the defense was able to use this inability to make an in-
> court identification.  Thus the decision not to cross-examine the child about
> the highly traumatic events of the home invasion was within the sound
> discretion of trial counsel.

St. Rec. Vol. 7 of 7, Order, p. 2, 3/27/07.  As noted, the Louisiana Fifth Circuit Court of Appeal found no error in that ruling,[29] and the Louisiana Supreme Court also denied petitioner's subsequent writ application without further comment.[30]

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005).  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.

In the instant case, petitioner simply has not meet his burden with respect to this claim.  He has not demonstrated that there is a reasonable probability that the result of either the suppression hearing or the trial would have been different if Stahl had been

---

[29]St. Rec. Vol. 7 of 7, 5th Cir. Order, 07-KH-322, 5/16/07.

[30]State ex rel. Lai v. State, 978 So.2d 322 (La. 2008); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2007-KH-1423, 4/4/08.

subjected to further cross-examination.  As for the decision not to cross-examine T.L., it must be remembered that T.L. was a twelve-year-old victim testifying as to the horrific circumstances of the crimes.  Arguably, a vigorous cross-examination of a child of such tender years in these circumstances might well have alienated jurors and elicit further sympathy for the victim.  In light of that consideration, and the possibility that an unpredictable child might provide unexpected and damning testimony, it can hardly be said that counsel performed deficiently in electing to avoid such risks.  Petitioner clearly has not met his burden to prove that he was prejudiced by his counsel's strategic decision to forego cross-examination of the child.

Petitioner has failed to establish that he is entitled to relief on this claim under Strickland or that any denial of relief on this claim by the state courts was contrary to, or an unreasonable application of, Supreme Court law.

VI.    DENIAL OF A FAIR TRIAL DUE TO OVERRULING OF DEFENSE COUNSEL'S OBJECTION TO THE STATE'S IMPROPER REBUTTAL ARGUMENT AND DENIAL THE MOTION FOR NEW TRIAL (CLAIM NO. TWO)

Petitioner claims that his right to a fair trial was violated when the trial court overruled defense counsel's objection to the State's improper rebuttal argument and denied the motion for new trial.  This allegation was raised on direct appeal and

dismissed by the Louisiana Fifth Circuit.[31]  The Louisiana Supreme Court subsequently denied the related writ application without further comment.[32]

To the extent that petitioner is arguing that the state court erred in applying state law in ruling on the objection or the motion for new trial, such a claim is not cognizable in a federal habeas corpus proceeding.  A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) and Lewis v. Jeffers, 497 U.S. 764, 780 (1990), and citing West v. Johnson, 92 F.3d 1385, 1404 (5th Cir.1996)); accord Turner v. Johnson, 46 F. Supp. 2d 655, 674 (S.D.Tex.1999).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67-68; see also Molo v. Johnson, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law simply will not

---

[31]Lai, 902 So.2d at 559-61; State Record Volume 7 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 04-KA-1053, pp. 12-16, April 26, 2005.

[32]State v. Lai, 922 So.2d 1175 (La. 2006); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2005-KO-1681, 2/3/06.

suffice.   28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983); <u>Prieto v.</u>

<u>Quarterman</u>, No. Civ. SA01CA11450G, 2006 WL 4059282, at *5 (W.D. Tex. Dec. 18,

2006), <u>aff'd</u>, No. 07-70001, 2008 WL 4218822 (5th Cir. Sept. 15, 2008).

 To the extent that petitioner is contending that the prosecutor's conduct was so

egregious as to violate petitioner's federal constitutional rights, that contention has no

merit.  In cases such as the instant one, in which the prosecutor is accused of having

made allegedly prejudicial or otherwise improper comments, the United States Fifth

Circuit Court of Appeals has held:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial
> remarks are a sufficient ground for habeas relief only if they are so
> prejudicial that they render the trial fundamentally unfair.  Such unfairness
> exists only if the prosecutor's remarks evince either persistent and
> pronounced misconduct or the evidence was so insubstantial that (in
> probability) but for the remarks no conviction would have occurred.

<u>Harris v. Cockrell</u>, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis,

and footnote omitted); <u>see also</u> <u>Jones v. Butler</u>, 864 F.2d 348, 356 (5th Cir. 1989).  A

prosecutor's remarks warrant habeas relief only if they were "a crucial, critical, highly

significant factor upon which the jury based its verdict."  <u>Harris</u>, 313 F.3d at 245.

 In the instant case, the prosecutor's remarks did not evince persistent and

pronounced misconduct.  The trial judge appropriately instructed the jury that closing

arguments were not to be considered evidence and that petitioner was not required to

produce any evidence.[33]   There is no reason to believe the jurors disregarded those instructions.  In light of these considerations and the abundant evidence of petitioner's guilt, I find that the prosecutor's comments were not a crucial, critical, highly significant factor upon which the jury based its verdict.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject that claim.

VII.   <u>DENIAL OF A FAIR TRIAL DUE TO THE INTERPRETER'S IN-COURT IDENTIFICATION FOR THE STATE'S TESTIFYING WITNESS (CLAIM NO. THREE)</u>

Petitioner claims that his right to a fair trial was violated when the interpreter made an in-court identification for the State's testifying witness.  This allegation was raised on direct appeal and dismissed by the Louisiana Fifth Circuit.[34]   The Louisiana Supreme Court subsequently denied the related writ application without further comment.[35]

---

[33]St. Rec. Vol. 5 of 7, Trial Transcript, pp. 16-17, 4/30/03.

[34]<u>Lai</u>, 902 So.2d at 561; State Record Volume 7 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 04-KA-1053, pp. 16-17, April 26, 2005.

[35]<u>State v. Lai</u>, 922 So.2d 1175 (La. 2006); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2005-KO-1681, 2/3/06.

This claim is procedurally barred, and may not be addressed by this court. The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered. Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

When a procedural default has been imposed by the state courts, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338-39 (5th Cir. 1995). This "independent and adequate state law" doctrine applies to both

substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Id. at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Id. at 339; Glover, 128 F.3d at 902.

The procedural rule invoked in this case; i.e., that review is precluded if defendant at trial failed to obtain a ruling on her motion, is obviously independent of the merits of the federal claim.  Further, "[t]he [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  To establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule.  Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).  Here, petitioner has made no attempt whatsoever to establish that the rule was not strictly or regularly followed.

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and

prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes, 191 F.3d at 614. In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). In his federal application, petitioner has made no attempt to establish cause for the failure at issue.[36] "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, the procedural bar must be applied unless doing so would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner

---

[36]For example, petitioner does not argue that his counsel was ineffective in failing to obtain a ruling on the motion. Further, since petitioner has never argued to the state courts that his counsel was ineffective in that respect, any such ineffective assistance of counsel claim would itself be procedurally defaulted. A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless petitioner shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim. See Edwards v. Carpenter, 529 U.S. 446 (2000); Rachal v. Quarterman, 265 Fed. App'x 371, 375 (5th Cir.), cert. denied, 129 S.Ct. 396 (2008); Bishop v. Epps, 265 Fed. App'x 285, 290-91 (5th Cir.), cert denied, 128 S.Ct. 2975 (2008); Scheanette v. Quarterman, 482 F.3d 815, 824 n.48 (5th Cir. 2007). Petitioner makes no attempt whatsoever to make that showing.

must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after the trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).  In light of the foregoing standard and the substantial evidence of petitioner's guilt, I find that petitioner has not made a persuasive showing that he is actually innocent of the charges against him and, therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar.  Accordingly, federal habeas review of this claim is precluded because the claim is procedurally barred.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Thang Lai for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____23rd_____ day of December, 2008.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE